UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **WCO SPECTRUM, LLC** | : | |
| | : | |
| *Plaintiff*, | : | Civil Action No. 1:26-CV-1014 |
| | : | |
| v. | : | |
| | : | **COMPLAINT** |
| **HISPANIC INFORMATION AND TELECOMMUNICATIONS NETWORK, INC.** | : | |
| | : | |
| *Defendant*. | : | |

Plaintiff WCO Spectrum, LLC ("WCO" or "Plaintiff"), by its undersigned attorneys, alleges as and for its Complaint ("Complaint") against Defendant Hispanic Information and Telecommunications Network, Inc. ("HITN" or "Defendant"), as follows:

### I.     NATURE OF THE ACTION

1. This is an action for breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing arising from HITN's willful failure to honor its contractual obligations under the Exclusivity and Break-Up Fee Agreement (the "Agreement") (a true and correct copy of which is attached hereto and incorporated herein as **Exhibit A**) entered into between WCO and HITN.

2. In the summer of 2020, WCO made a formal, market-based offer to purchase HITN's spectrum licenses. Under the Agreement, if HITN's then-lessee exercised its Right of First Refusal ("ROFR") and HITN accepted the lessee's offer, HITN would be obligated to pay WCO a $15,000,000 break-up fee (the "Break-Up Fee").

3.  HITN's lessee exercised the ROFR, and HITN entered into an agreement with the lessee for the purchase of its spectrum licenses, thus entitling WCO to the Break-Up Fee.

4.  In October 2024, HITN received consideration for the sale of its spectrum licenses to its lessee, an action that unequivocally triggered HITN's obligation to pay the Break-Up Fee to WCO under the Agreement.

5.  Despite WCO fully performing its obligations under the Agreement and engaging in good faith negotiations with HITN for the purchase of its spectrum licenses, HITN has unjustly refused to pay the Break-Up Fee owed to WCO following its agreement with its lessee for the sale of the licenses.

6.  HITN's refusal to comply with the clear terms of the Agreement has caused WCO significant financial harm. Having rightfully earned the Break-Up Fee, WCO has been wrongfully denied the benefit of its bargain. WCO now seeks redress for HITN's unlawful actions, including payment of the Break-Up Fee, interest, attorneys' fees, and any additional damages resulting from HITN's willful misconduct.

## II. THE PARTIES

7.  Plaintiff WCO is a limited liability company organized and existing under the laws of the state of Delaware and is a citizen of every state in which its members are citizens. WCO's principal office is located at 9903 Wilshire Boulevard, Beverly Hills, California 90212. WCO's members are: (a) Pacific Capital Group, LLC, a limited liability company organized under the laws of California and a corporate citizen of California, and (b) CMK Investments, LLC ("CMK"), a limited liability company organized under the laws of California and a corporate citizen of California. Thus, WCO is a citizen of Delaware and California. *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship.*, 213 F.3d 48, 51-52 (2d Cir. 2000) (collecting cases).

8. Defendant HITN is a not-for-profit corporation organized under the laws of New York and duly registered with the New York Department of State Division of Corporations, DOS ID: 735801, with a principal office at 63 Flushing Avenue, Building 292, Suite 211, Brooklyn, New York 11205.

### III. JURISDICTION AND VENUE

9. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000. Specifically, Plaintiff WCO LLC is a citizen of Delaware and California and Defendant HITN Inc. is a corporate citizen of New York State.

10. At all times relevant to this action, Defendant has transacted business within the Southern District of the State of New York and purposefully availed itself of the opportunities in this District and therefore reasonably should expect its actions to be subject to adjudication within this District.

11. Moreover, pursuant to the Agreement, Defendant agreed that all lawsuits under the Agreement will be filed in the state or federal courts located in New York County. *See* **Exhibit A**, ¶ 12. ("The parties hereby irrevocably and unconditionally consent and submit to the exclusive jurisdiction of the courts of the State of New York and of the United States of America located in New York County for any actions, suits or proceedings arising out of or relating to this Agreement (and agree not to commence any action, suit or proceeding relating thereto except in such courts, and further agree that service of any process, summons, notice or document by U.S. registered mail to their respective addresses set forth above shall be effective service of process for any action, suit or proceeding brought against either party in any such court)).

12. Venue is also proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because Defendant regularly conducts business in this district. Additionally, a substantial portion of the events giving rise to this action occurred within this district.

### IV. FACTS COMMON TO ALL CAUSES OF ACTION

13. Decades ago, the Federal Communications Commission ("FCC") reserved licenses for the 2.5 GHz frequencies exclusively for educational use. These licenses were awarded to public television stations and other nonprofit organizations with educational missions, including HITN.

14. Over time, the FCC authorized Educational Broadband Service ("EBS") license holders, such as HITN, to lease excess spectrum capacity to commercial providers, which many began doing with cellular carriers.

15. In 2019, the FCC adopted rule changes permitting, for the first time in decades, free-market sales of EBS licenses for the 2.5 GHz band of the electromagnetic spectrum.

16. Following this rule change, WCO entered the market with the mission of helping EBS license holders like HITN maximize the value of their spectrum assets.

17. In the summer of 2020, WCO approached HITN to purchase forty-nine of HITN's EBS licenses.

18. These forty-nine EBS licenses were subject to lease agreements originally between HITN and Clearwire Spectrum Holdings LLC or Fixed Wireless Holdings LLC.[1]

19. Each lease agreement contained a ROFR provision requiring HITN to notify the lessee if it intended to accept an offer for the sale of its EBS licenses.

---

[1] Clearwire Spectrum Holdings LLC and Fixed Wireless Holdings LLC were subsidiaries of Clearwire Corporation. In 2013, Sprint Corporation acquired a controlling interest in Clearwire Corporation. In April 2020, Sprint Corporation merged with T-Mobile US, Inc. As part of this merger, T-Mobile US, Inc., acquired the spectrum assets held by Sprint Corporation, such as those previously controlled by Clearwire Spectrum Holdings LLC and Fixed Wireless Holdings LLC. T-Mobile US Inc., is the ultimate parent of Clearwire Spectrum Holdings LLC and Fixed Wireless Holdings LLC.

20. Under the ROFR provision, the lessee had the right to purchase the license by matching any bona fide offer within a specified time period.

21. On or about July 29, 2020, after conducting due diligence and formulating competitive pricing, WCO submitted a detailed, non-binding offer letter to HITN proposing to purchase its forty-nine EBS licenses, along with any associated lease agreements, for $251,125,462.57 (the "Offer"). A true and correct copy of the July 29, 2020 offer letter is attached hereto and incorporated herein as **Exhibit B**.

22. Simultaneously with submitting the Offer, WCO and HITN entered into the Agreement. *See* **Exhibit A**.

23. In light of the substantial time, effort, and resources WCO had already invested in preparing and submitting the Offer, and to secure WCO's continued commitment to evaluating and negotiating the transaction, HITN expressly agreed to an exclusivity period. *Id.* ¶ 2.

24. The Agreement required that, during this exclusivity period, if HITN entered into any agreement with its existing lessee (or any of its affiliates) to sell the EBS licenses pursuant to the lessee's exercise of the ROFR based on WCO's Offer, HITN would pay WCO the Break-Up Fee. *Id.* ¶ 3.

25. HITN further agreed that payment of the Break-Up Fee would be due within five business days of receiving any portion of the consideration from the ROFR transaction -- whether that consideration was received during or after the exclusivity period. *Id.*

26. The Agreement further provided that, "[i]n the event of litigation relating to this Agreement, the non-prevailing party as determined by a court of confidence jurisdiction will be liable for, and will pay to the prevailing party, the reasonable cost of such litigation, including,

without limitation, outside legal fees incurred by the prevailing party and connection with such litigation (including any appeal relating thereto)." *Id.* ¶ 10.

27. On August 14, 2020, HITN notified the lessee of its forty-nine EBS spectrum leases of its intention to sell the EBS licenses pursuant to the Offer. True and correct copies of three letters dated August 14, 2020 from HITN to Fixed Wireless Holdings LLC and Sprint Corporation, are attached hereto and incorporated herein as **Exhibit C**.

28. On September 11, 2020, T-Mobile US, Inc. ("T-Mobile"), as lessee, exercised its ROFR for the forty-nine EBS licenses on the basis of the Offer.

29. During the exclusivity period, HITN entered into an agreement with T-Mobile for the purchase of the forty-nine EBS licenses. This agreement was formally memorialized in an asset purchase agreement between HITN and T-Mobile, dated September 29, 2021.

30. Thereafter, HITN and T-Mobile sought approval from the FCC and the New York States Charities Bureau ("NYS Charities Bureau") for the sale of HITN's EBS licenses.

31. The approval process spanned over three years, during which WCO repeatedly checked in with HITN, requesting updates on the approval of the sale, as receipt of the funds from T-Mobile would trigger HITN's obligation to pay the Break-Up Fee to WCO.

32. On September 9, 2024, WCO's representative followed up with HITN, requesting a status update on the Break-Up Fee owed to WCO. A true and correct copy of email correspondence, dated September 9, 2024, and September 10, 2024, between WCO and HITN is attached hereto and incorporated herein as **Exhibit D**.

33. On September 10, 2024, HITN informed WCO that the NYS Charities Bureau had not yet approved the sale of the EBS licenses. *Id.*

34. On or about October 24, 2024, HITN's representative, Mike Nieves informed WCO that HITN had closed on its sale of the EBS licenses to T-Mobile and directed WCO to call HITN's counsel with any questions.

35. On October 28, 2024, HITN's counsel informed WCO that WCO would not be receiving the Break-Up Fee because the Agreement allegedly expired.

36. Despite HITN's counsel's claims, no provision of the Agreement supports HITN's refusal to pay the Break-Up Fee.

37. WCO has fully complied with all terms of the Agreement and performed all obligations under it.

38. Accordingly, WCO is entitled to the Break-Up Fee.

## COUNT I – Breach of Contract

39. Plaintiff incorporates all of the preceding paragraphs as if fully set forth at length again herein.

40. On July 29, 2020, HITN entered into the Agreement with WCO.

41. The Agreement unequivocally requires that HITN pay the Break-Up Fee to WCO when HITN receives consideration for its EBS licenses, whether during or after the exclusivity period.

42. HITN has received consideration from T-Mobile in the form of the sale proceeds, which triggered the obligation to pay the Break-Up Fee.

43. HITN willfully breached the Agreement with WCO by failing to pay the $15,000,000 break-up fee owed to WCO following HITN's sale of its EBS licenses to T-Mobile.

44. WCO has fully complied with its obligations under the Agreement.

45.     As a direct and proximate result of HITN's breach, WCO has suffered significant financial harm, including the loss of the Break-Up Fee, which HITN is contractually obligated to pay. Plaintiff seeks judgment in its favor for the $15,000,000 Break-Up Fee, interest, attorneys' fees and costs, and such further and additional relief as this Court deems just compensation.

### COUNT II – Unjust Enrichment

46.     Plaintiff incorporates all of the preceding paragraphs as if fully set forth at length again herein.

47.     In the alternative, WCO alleges that HITN was unjustly enriched by its preparation and submission of the Offer.

48.     HITN received significant benefits from WCO's diligent efforts of evaluating HITN's EBS licenses and submittal of the Offer for such licenses.

49.     WCO's preparation and submission of the Offer has resulted in T-Mobile exercising its ROFR and purchasing HITN's EBS licenses for a significant sum.

50.     HITN promised WCO would receive compensation of $15,000,000 for the time, effort and resources it devoted to evaluating HITN's EBS licenses and submitting the Offer.

51.     HITN was aware that WCO intended to be fully compensated for its efforts of evaluating HITN's EBS licenses and submitting the Offer for such licenses.

52.     HITN has been unjustly enriched by the actions of WCO, which resulted in T-Mobile purchasing HITN's EBS licenses.

53.     HITN's refusal to pay the Break-Up Fee while unjustly benefiting from the transaction—has been inequitable, and WCO is entitled to restitution of $15,000,000. Plaintiff seeks restitution in the amount of the $15,000,000 Break-Up Fee, along with interest, and any other relief deemed just and proper by the Court.

### COUNT III – Breach of Implied Covenant of Good Faith and Fair Dealing

54. Plaintiff incorporates all of the preceding paragraphs as if fully set forth at length again herein.

55. New York law, which governs the Agreement, implies a covenant of good faith and fair dealing in all contracts.

56. As a result of the above-described actions of HITN, HITN has violated the implied covenant of good faith and fair dealing contained in the Agreement.

57. As a direct and proximate result of HITN's violation of the implied covenant of good faith and fair dealing, WCO has suffered significant financial harm, including the loss of the Break-Up Fee, which HITN is contractually obligated to pay. Plaintiff seeks judgment in its favor for the $15,000,000 Break-Up Fee, interest, attorneys' fees and costs, and such further and additional relief as this Court deems just compensation.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff WCO Spectrum, LLC demands judgment against Defendant Hispanic Information and Telecommunications Network, Inc., as follows:

A. Granting WCO an award of not less than $15,000,000 to be determined at trial for damages it sustained as a result of Defendant's conduct;

B. Granting an award of reasonable attorneys' fees and costs incurred in connection with this action;

C. Granting an award of pre-judgment and post-judgment interest, as provided by law; and

D. Granting such other and further relief as this Court deems necessary and proper.

Dated: New York, New York
       February 5, 2026

Respectfully submitted,

**STRADLEY RONON STEVENS & YOUNG LLP**

Ellen B. Unger, Esq. (EU0836)
100 Park Avenue, Suite 2000
New York, New York 10017
(212) 404-0652
eunger@stradley.com
*Attorneys for Plaintiff*

**MITTS LAW, LLC**

*s/ Maurice R. Mitts*
Maurice R. Mitts, Esq.
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0112
mmitts@mittslaw.com
*Co-Counsel for Plaintiff*
*Pro Hac Vice Admission Pending*