# **EXHIBIT A**



# WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499-5300

## EXCLUSIVITY AND BREAK-UP FEE AGREEMENT

This Exclusivity and Break-Up Fee Agreement is made as of July 29, 2020 (this "Agreement") by and between Hispanic Information and Telecommunications Network, Inc. (together with its Affiliates, "Company") and WCO Spectrum, LLC ("WCO").

WHEREAS, concurrent with the execution of this Agreement, WCO is submitting a non-binding offer letter dated as of the date hereof (the "Offer") on behalf of WCO Spectrum, LLC to Company to purchase the Educational Broadband Spectrum ("EBS") licenses set forth on Exhibit A attached hereto (each a "License" and collectively, the "Licenses");

WHEREAS, the Licenses are subject to rights of first refusal or other purchase rights set forth in certain lease agreements (collectively, the "ROFR Provisions") in favor of the existing lessees of the Licenses (collectively, the "ROFR Parties");

WHEREAS, prior to the date hereof, WCO expended significant time, effort and resources, and, subject to receiving a favorable response to the Offer, plans to expend significant additional time, effort and resources, toward the evaluation, negotiation and documentation of the transaction outlined in the Offer (the "Transaction");

WHEREAS, the Offer is valuable to Company and will give Company an opportunity to sell the Licenses;

NOW, THEREFORE, for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, Company and WCO agree as follows:

1. In consideration of the preparation and submission of the Offer by WCO while inducing WCO's willingness to commit additional time, effort and resources toward the evaluation, negotiation and/or documentation of the Transaction outlined in the Offer, Company agrees to the exclusivity and fee arrangements described herein.

2. *Exclusivity.*

    a. The "Exclusivity Period" shall extend with respect to each Licensee individually from the date hereof until the earliest of: (i) the six-month anniversary of the date hereof; (ii) the expiration of the Negotiating Window (as defined below) with respect to a License if Company and WCO do not enter into an asset purchase agreement reflecting the principal terms set forth in the Offer ("APA") during such Negotiating Window as set forth in Section 4 below; (iii) the date Company rejects an Amended Offer (as defined below) from WCO pursuant to Section 6 below or the expiration of the Negotiating Window for an Amended Offer, if any, pursuant to Section 6 below; or (d) the occurrence of a Material Transaction



**WINNICK & COMPANY**

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499-5300

Change (as defined below). For the avoidance of doubt, in no event shall the Exclusivity Period extend past the six-month anniversary of the date hereof.

b.  During the Exclusivity Period, Company shall not, and shall cause its Affiliates and each of its and their respective directors, officers, employees and shall direct each of its and their respective representatives or agents, including without limitation investment bankers, lawyers and other advisors (collectively, the "Representatives") not to, do any of the following, directly or indirectly: (i) negotiate, authorize, propose or enter into a definitive agreement or an agreement in principle with respect to any transaction involving a direct or indirect sale, transfer or lease of any License to any third party (any of the foregoing, an "Acquisition Transaction"); (ii) solicit, conduct any discussions or negotiations with respect to or otherwise knowingly encourage or facilitate any submissions of proposals or offers in respect of, an Acquisition Transaction; or (iii) furnish or cause to be furnished to any Person (as defined below) other than its Representatives any information in connection with an Acquisition Transaction or any information about the Offer (including the identity of WCO) or the terms of this Agreement.

c.  In the event any third party (other than a ROFR Party) provides a proposal or offer to Company, or makes an inquiry or contact with WCO, in each case, in connection with an Acquisition Transaction, Company or its Representatives shall promptly notify WCO in writing and shall provide WCO with the proposed terms and a copy of any materials received in connection therewith. Company further agrees to immediately suspend, and to instruct its Representatives to immediately suspend, any activities that would be prohibited by this paragraph. Notwithstanding anything contained in this Section 2 to the contrary, nothing in this Section 2 shall prohibit Company from complying with its obligations under the lease agreements with the ROFR Parties, including complying with the ROFR Provisions thereunder by entering into discussions, negotiations or one or more definitive agreements for a ROFR Transaction (as defined below) or closing such ROFR Transaction, subject to compliance with Section 3 hereto if applicable.

3.  *ROFR Transaction*. In addition and without limiting the foregoing, if, at any time during the Exclusivity Period, Company enters into an agreement with a ROFR Party or any of its Affiliates pursuant to an exercise of a ROFR Provision on the basis of the Offer (each, a "ROFR Transaction"), then Company agrees to pay to an account designated by WCO a break-up fee with respect to each License included in such ROFR Transaction equal to the amount set forth on Exhibit A opposite such License under the heading "Break-Up Fee" (each, a "Break-Up Fee") within five (5) business days following the date that Company has received all or a portion of the consideration with respect to such ROFR Transaction, whether the receipt of such consideration occurs during or after the Exclusivity Period.

2

NY 78161277v6



**WINNICK & COMPANY**

9355 Wilshire Blvd. Suite 200
Beverly Hills, CA 90210
(310) 499-5300

4. *Negotiation and Execution of APA During Negotiating Window.* Promptly upon learning from a ROFR Party whether it will exercise of its rights under the ROFR Provisions, including any election by the ROFR Party declining to exercise such rights or the expiration of the period available to the ROFR Party to exercise such rights, Company shall provide WCO a written notice stating whether the applicable ROFR Party has exercised its rights under the ROFR Provisions (each a "ROFR Notice"). With respect to each License where the applicable ROFR party has failed to exercise its rights under the ROFR Provisions, Company and WCO shall negotiate in good faith and use their respective reasonable best efforts to enter into an APA covering such License that reflects the principal terms set forth in the Offer and contains other terms that are industry-standard for asset purchase agreements of such nature, or add such License to an existing APA between Company and WCO by amendment of the APA prior to the expiration of the Negotiating Window. For purposes of this Agreement, "Negotiating Window" means, with respect to each Lease where the applicable ROFR Party has failed to exercise its rights under the ROFR Provisions, the period during which Company and WCO may enter into a definitive agreement with respect to the Transaction without retriggering the ROFR Party's rights of first refusal pursuant to the ROFR Provisions.

5. *Tail Period.* Without limiting the foregoing, if the Negotiating Window expires for a License without Company and WCO executing an APA for such License despite each party negotiating in good faith, then, if Company enters into an Acquisition Transaction with T-Mobile US, Inc. or its Affiliate (collectively "TMO") at any time during the six-month period following the expiration of the Negotiating Window ("Tail Period"), Company shall pay the Break-Up Fee for such License to an account designated by WCO within five (5) business days following the date that Company has received all or a portion of the consideration with respect to such Acquisition Transaction, whether the receipt of such consideration occurs during or after the Tail Period.

6. *Amended Offer.* Notwithstanding the foregoing or anything else in this Agreement to the contrary, WCO may determine during the Negotiating Window with respect to a License, in its reasonable discretion based on its due diligence, to materially modify the terms of the Offer in a manner adverse to Company (each an "Amended Offer"). WCO shall use commercially reasonable efforts to submit any Amended Offer as early as practicable during the Negotiating Window for the License.

   a. If WCO submits an Amended Offer with respect to a License and Company rejects such Amended Offer, Company will no longer be subject to the Exclusivity Period or owe WCO a Break-Up Fee with respect to such License.

   b. If WCO submits an Amended Offer with respect to a License and Company accepts such Amended Offer, Company shall comply with its obligations to the applicable ROFR Parties under the lease agreement for the License, including complying with the ROFR Provisions thereunder by entering into discussions, negotiations or one or more definitive agreements for a ROFR Transaction taking

3

# WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499-5300

into account the Amended Offer. As soon as reasonably feasible thereafter, Company shall provide WCO with a ROFR Notice with respect to the Amended Offer in accordance with Section 4 above.

    i.    If the ROFR Notice states that Company is unable to sell such License to WCO due to the exercise by a ROFR Party of its right to enter into a ROFR Transaction with respect to such License, the Exclusivity Period shall terminate and Company's obligation to pay WCO the Break-Up Fee associated with the License pursuant and subject to Section 3 shall survive, except that the Break-Up Fee shall be reduced by the *pro rata* difference between WCO's original Offer for the License and the Amended Offer.

    ii.    If the ROFR Notice states that Company is able to sell such License due to the failure by a ROFR Party to exercise its right to enter into a ROFR Transaction with respect to such License, Company and WCO shall negotiate in good faith and use their respective reasonable best efforts to enter into an APA covering such License that reflects the principal terms set forth in the Amended Offer and contains other terms that are industry-standard for asset purchase agreements of such nature, or add such License to an existing APA between Company and WCO by amendment of the APA.

  c.  Notwithstanding anything in this Agreement to the contrary, upon the occurrence of a Material Transaction Change, (i) the Exclusivity Period and (ii) Company's obligation to pay a Break-Up Fee, in each case, with respect to all Licenses shall terminate, except with respect to any ROFR Transactions entered into on the basis of the Offer prior to the occurrence of the Material Transaction Change. For purposes of this Agreement, "Material Transaction Change" means (A) the withdraw of the Offer and/or (B) submission by WCO of Amended Offers, in each case, with respect to Leases representing 20% or more (by dollar value) of the aggregate Break-Up Fees payable hereunder.

7.    If Company enters into an agreement for a ROFR Transaction between Company and a ROFR Party under Section 3 or an agreement for an Acquisition Transaction between Company and TMO under Section 5 (each a "Triggering Event"), and Company has not paid the applicable Break-Up Fee to WCO within 180 days of the Triggering Event, then Company shall, upon WCO's written request, report monthly in writing to WCO on the status of the underlying ROFR Transaction under Section 3 or Acquisition Transaction under Section 5 until such time as such transaction has closed or been terminated.

8.    The term "Affiliate" means with respect to a party, any other Person which, directly or through one or more intermediaries, is controlled by, controls or is under common control with such party, and will include any Person that enters into a transaction with a ROFR

4

**WINNICK & COMPANY**

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499 5300

Party or any of its Affiliates pursuant to which the ROFR Party and/or any of its Affiliates has the right to use such License or Licenses other than in accordance with the applicable lease(s) of such License or Licenses in effect as of the date hereof. The term "Person" means any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, governmental authority, cooperative, association, other entity, or individual, and the heirs, executors, administrators, legal representatives, successors, and assigns of such person as the context may require.

9.  Nothing in this Agreement shall be construed as an obligation of any of the parties hereto to proceed with the Transaction. Each party shall be free for any reason to withdraw from discussions and not proceed with a Transaction without obligation or liability to the other or to any other person, provided that any such withdrawal by a party from discussions shall not affect such party's obligations hereunder.

10. In the event of litigation relating to this Agreement, the non-prevailing party as determined by a court of competent jurisdiction will be liable for, and will pay to the prevailing party, the reasonable cost of such litigation, including, without limitation, outside legal fees incurred by the prevailing party in connection with such litigation (including any appeal relating thereto).

11. This Agreement may not be assigned by operation of law or otherwise without the express prior written consent of the other parties hereto. This Agreement may not be amended or modified except by an instrument in writing signed by each of the parties to this Agreement. This Agreement and the Offer are the complete and exclusive statement of the parties' agreement with respect to the subject matter and supersedes all other oral and written agreements or communications between the parties prior to the execution of this Agreement relating to this subject matter. Nothing in this Section is intended to limit or exclude any liability for fraud by either party prior to the execution of this Agreement.

12. This Agreement shall be governed by, and the rights and duties of the parties hereunder shall be construed in accordance with, the laws of the State of New York. The parties hereby irrevocably and unconditionally consent and submit to the exclusive jurisdiction of the courts of the State of New York and of the United States of America located in New York County for any actions, suits or proceedings arising out of or relating to this Agreement (and agree not to commence any action, suit or proceeding relating thereto except in such courts, and further agree that service of any process, summons, notice or document by U.S. registered mail to their respective addresses set forth above shall be effective service of process for any action, suit or proceeding brought against either party in any such court). The parties hereby irrevocably and unconditionally waive any objection that either party may now or hereafter have to the laying of venue of any action, suit or proceeding arising out of or relating to this Agreement in the courts of the State of New York or the United States of America located in New York County, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought

5



9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499 5300

in an inconvenient forum. THE PARTIES FURTHER IRREVOCABLY AND UNCONDITIONALLY WAIVE THE RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

13. The parties hereto agree that irreparable damage may occur in the event any provision of this Agreement was not performed in accordance with the terms hereof, that the parties hereto shall be entitled to seek specific performance of the terms hereof, in addition to any other remedy at law or equity, and that any requirement for the proving of actual damages or the securing or posting of any bond in connection with such remedy is waived.

14. This Agreement may be executed by facsimile signature and in counterparts.

*[Signatures on next page.]*

6

NY 78161277\6



# WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499-5300

In order to confirm our mutual agreement as set forth in this Agreement, please sign this Agreement in the space provided below and return it to us, whereupon it shall constitute our binding agreement with respect to the subject matter hereof.

Hispanic Information and Telecommunications Network, Inc.

By: _____
Name: Jonathan Guerra
Title: General Counsel

WCO Spectrum, LLC, by its managing member Winnick & Company

By: _____
Name: Carl Katerndahl
Title: Managing Partner

By: _____
Name: Tom Griffith
Title: Managing Director



# WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA. 90210
(310) 499-5300

## EXHIBIT A

### LICENSES; BREAK-UP FEES

| Call Sign | Market | Break-Up Fee |
|---|---|---|
| WHR829 | New York, NY | $2,150,533.92 |
| WNC208 | Houston, TX | $1,324,797.39 |
| WLX546 | Seattle, WA | $727,816.26 |
| WLX825 | Philadelphia, PA | $521,390.01 |
| WQAB902 | New York, NY (LI) | $519,205.97 |
| WLX537 | Pittsburgh, PA | $465,313.40 |
| WLX681 | Portland, OR | $462,633.07 |
| WLX704 | San Antonio, TX | $408,849.48 |
| WLX370 | Las Vegas, NV | $406,409.75 |
| WLX690 | Providence, RI | $406,144.02 |
| WLX667 | Salt Lake City, UT | $403,399.60 |
| WLX435 | Cincinnati, OH | $387,298.87 |
| WLX362 | Orlando, FL | $377,572.56 |
| WLX709 | Kansas City, MO | $363,071.12 |
| WLX720 | Sacramento, CA | $328,560.07 |
| WQCQ718 | Raleigh, NC | $325,968.06 |
| WND384 | San Bernardino, CA | $325,247.72 |
| WLX684 | Nashville, TN | $292,249.70 |
| WQCQ267 | Harrisburg, PA | $278,551.43 |
| WNC321 | Hartford, CT | $275,380.96 |
| WLX375 | Dayton, OH | $270,926.71 |
| WLX557 | Memphis, TN | $265,676.55 |
| WLX672 | Oklahoma City, OK | $259,391.35 |
| WLX671 | Fresno, CA | $241,829.64 |
| WLX753 | Rochester, NY | $225,154.95 |
| WHR681 | New Orleans, LA | $211,845.27 |
| WLX470 | Tucson, AZ | $209,284.38 |
| WLX367 | Los Angeles, CA | $201,082.84 |
| WLX770 | Buffalo, NY | $193,933.38 |
| WLX538 | Jacksonville, FL | $192,098.62 |
| WNC558 | Phoenix, AZ | $191,795.39 |
| WHR930 | Albany, NY | $183,945.58 |

NY 78161277v6



**WINNICK & COMPANY**

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499-5300

| | | |
|---|---|---|
| WLX673 | Albuquerque, NM | $181,676.62 |
| WNC584 | El Paso, TX | $180,769.77 |
| WLX534 | Tulsa, OK | $179,590.78 |
| WNC681 | Norfolk, VA | $168,485.30 |
| WND612 | Charlotte, NC | $163,833.48 |
| WLX682 | Syracuse, NY | $161,358.86 |
| WLX361 | Colorado Springs, CO | $144,594.22 |
| WNC633 | Mobile, AL | $116,606.17 |
| WLX249 | Corpus Christi, TX | $92,219.58 |
| WNC285 | Albany, NY | $46,358.81 |
| WQCN524 | Grand Junction, CO | $42,107.28 |
| WLX806 | Las Cruces, NM | $35,064.06 |
| WQCN526 | Bullhead City, AZ | $27,857.11 |
| WQCI715 | Wenatchee, WA | $25,120.14 |
| WQCQ367 | Casper, WY | $16,678.19 |
| WQCQ366 | Globe, AZ | $11,157.83 |
| WQCQ365 | Key West, FL | $9,163.77 |
| Total | | $ 15,000,000.00 |

NY 78161277v6