# EXHIBIT C

MITTS LAW, LLC
1822 Spruce Street
Philadelphia, Pennsylvania 19103
Tel: (215) 866-0110 Fax: (215) 866-0111

Maurice R. Mitts
mmitts@mittslaw.com
Direct: 215.866.0112

December 2, 2024

**CONFIDENTIAL**

**VIA E-MAIL (jgoldfeder@cozen.com)**
Jerry H. Goldfeder, Esq.
Cozen O'Connor
3WTC, 175 Greenwich St 55th Floor
New York, NY 10007

Re: *Break-up Fee Due and Owing from Hispanic Information and Telecommunications Network, Inc. to WCO Spectrum LLC*

Counsel:

This law firm represents WCO Spectrum, LLC ("WCO") in connection with litigation matters. It has come to our attention that your client, Hispanic Information and Telecommunications Network, Inc. ("HITN"), has refused to pay certain break-up fees that it owes to WCO in connection with the sale of certain electromagnetic spectrum licenses in a related transaction HITN closed with a subsidiary of T-Mobile U.S., Inc. ("T-Mobile") pursuant to the Exclusivity and Break-Up Fee Agreement (the "Agreement")[1] executed by HITN and WCO effective July 29, 2020. The break-up fee in question is $15 million ($15,000,000) and, as all conditions precedent have been satisfied and there is no legal impediment to payment under the Agreement, HITN must pay that amount to WCO immediately.

On or around July 29, 2020, HITN and WCO executed the Agreement. The Agreement was made concurrently with an offer from WCO to purchase a number of Educational Broadband Spectrum ("EBS") licenses as set forth in the thereto attached Exhibit A. Prior to WCO's offer, HITN had been leasing this spectrum to Fixed Wireless Holdings, LLC ("FWH"), a subsidiary of Sprint Corporation (which has since merged into T-Mobile). As is customary for T-Mobile's leases, the lease between Fixed Wireless Holdings, LLC and HITN included a contractual "Right of First Refusal," ("ROFR"), under which FWH could match any bid to purchase the spectrum from HITN, effectively usurping any potential purchaser. In preparing and pursuing its offer to purchase spectrum from HITN, WCO expended substantial time, effort, and resources in spite of the risk that its offer could be matched at will by FWH.

[1] A copy of the Agreement, as executed by both parties, is attached hereto as Exhibit A.

Accordingly, HITN agreed to certain "exclusivity and fee arrangements" out of "consideration of the preparation and submission of the Offer by WCO while inducing WCO's willingness to commit additional time, effort, and resources toward the evaluation, negotiation, and/or documentation of" the WCO Offer. *See* Agreement ¶ 1. One such arrangement was the Agreement's "ROFR Transaction" Provision:

> 3. *ROFR Transaction.* In addition and without limiting the foregoing, if at any time during the Exclusivity Period,[2] Company enters into an agreement with a ROFR Party [FWH here] or any of its Affiliates pursuant to an exercise of a ROFR Provision on the basis of the Offer (each, a "ROFR Transaction"), then Company agrees to pay to an account designated by WCO a break-up fee with respect to each License included in such ROFR Transaction equal to the amount set forth on Exhibit A opposite such License under the heading "Break-Up Fee" (each, a "Break-Up Fee") within five (5) business days following the date that Company has received all or a portion of the consideration with respect to such ROFR Transaction, **whether the receipt of such consideration occurs during or after the Exclusivity Period.**

Agreement, ¶ 3 (emphasis added).

We understand that on August 14, 2020, HITN notified FWH of the offer it had received from WCO. *See* Exhibit B, attached. Shortly thereafter, FWH exercised its ROFR, and agreed to purchase all of the licenses in question. This triggered the ROFR Transaction provision, which in turn triggered HITN's obligation to pay the Breakup Fees indicated in the Agreement's Exhibit A upon the closing of HITN's transaction to sell the EBS licenses to FWH:

---

[2] The Exclusivity Period is defined in Paragraph 2 of the Agreement, and extends six months from the date of execution.

**EXHIBIT A**

LICENSES; BREAK-UP FEES

| Call Sign | Market | Break-Up Fee |
|---|---|---|
| WHR829 | New York, NY | $2,150,533.92 |
| WNC208 | Houston, TX | $1,324,797.39 |
| WLX546 | Seattle, WA | $727,816.26 |
| WLX825 | Philadelphia, PA | $521,390.01 |
| WQAB902 | New York, NY (LI) | $519,205.97 |
| WLX537 | Pittsburgh, PA | $465,313.40 |
| WLX681 | Portland, OR | $462,633.07 |
| WLX704 | San Antonio, TX | $408,849.48 |
| WLX370 | Las Vegas, NV | $406,409.75 |
| WLX690 | Providence, RI | $406,144.02 |
| WLX667 | Salt Lake City, UT | $403,399.60 |
| WLX435 | Cincinnati, OH | $387,298.87 |
| WLX362 | Orlando, FL | $377,572.56 |
| WLX709 | Kansas City, MO | $363,071.12 |
| WLX720 | Sacramento, CA | $328,560.07 |
| WQCQ718 | Raleigh, NC | $325,968.06 |
| WND384 | San Bernardino, CA | $325,247.72 |
| WLX684 | Nashville, TN | $292,249.70 |
| WQCQ267 | Harrisburg, PA | $278,551.43 |
| WNC321 | Hartford, CT | $275,380.96 |
| WLX375 | Dayton, OH | $270,926.71 |
| WLX557 | Memphis, TN | $265,676.55 |
| WLX672 | Oklahoma City, OK | $259,391.35 |
| WLX671 | Fresno, CA | $241,829.64 |
| WLX753 | Rochester, NY | $225,154.95 |
| WHR681 | New Orleans, LA | $211,845.27 |
| WLX470 | Tucson, AZ | $209,284.38 |
| WLX367 | Los Angeles, CA | $201,082.84 |
| WLX770 | Buffalo, NY | $193,933.38 |
| WLX538 | Jacksonville, FL | $192,098.62 |
| WNC558 | Phoenix, AZ | $191,795.39 |
| WHR930 | Albany, NY | $183,945.58 |

| | | |
|---|---|---|
| WLX673 | Albuquerque, NM | $181,676.62 |
| WNC584 | El Paso, TX | $180,769.77 |
| WLX534 | Tulsa, OK | $179,590.78 |
| WNC681 | Norfolk, VA | $168,485.30 |
| WND612 | Charlotte, NC | $163,833.48 |
| WLX682 | Syracuse, NY | $161,358.86 |
| WLX361 | Colorado Springs, CO | $144,594.22 |
| WNC633 | Mobile, AL | $116,606.17 |
| WLX249 | Corpus Christi, TX | $92,219.58 |
| WNC285 | Albany, NY | $46,358.81 |
| WQCN524 | Grand Junction, CO | $42,107.28 |
| WLX806 | Las Cruces, NM | $35,064.06 |
| WQCN526 | Bullhead City, AZ | $27,857.11 |
| WQCI715 | Wenatchee, WA | $25,120.14 |
| WQCQ367 | Casper, WY | $16,678.19 |
| WQCQ366 | Globe, AZ | $11,157.83 |
| WQCQ365 | Key West, FL | $9,163.77 |
| Total | | $ 15,000,000.00 |

We are now advised that the ROFR Transaction for these licenses has closed and been approved by the Federal Communications Commission and other relevant regulators. Consequently, all conditions precedent to the payment of the Break-Up Fees in question (totaling $15 million) have been satisfied, and WCO is entitled to the contractually due payment. Accordingly, WCO expects that HITN will comply with the Agreement and make payment to WCO immediately.

WCO prefers to resolve this matter amicably. That said, WCO will take all steps necessary to enforce compliance with the Agreement if payment is not received on or before December 16, 2024. WCO reserves all rights and waives none.

Very truly yours,

**MITTS LAW, LLC**

Maurice R. Mitts

MRM/aeg
Enclosures

# EXHIBIT A

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499-5300

## EXCLUSIVITY AND BREAK-UP FEE AGREEMENT

This Exclusivity and Break-Up Fee Agreement is made as of July 29, 2020 (this "Agreement") by and between Hispanic Information and Telecommunications Network, Inc. (together with its Affiliates, "Company") and WCO Spectrum, LLC ("WCO").

WHEREAS, concurrent with the execution of this Agreement, WCO is submitting a non-binding offer letter dated as of the date hereof (the "Offer") on behalf of WCO Spectrum, LLC to Company to purchase the Educational Broadband Spectrum ("EBS") licenses set forth on Exhibit A attached hereto (each a "License" and collectively, the "Licenses");

WHEREAS, the Licenses are subject to rights of first refusal or other purchase rights set forth in certain lease agreements (collectively, the "ROFR Provisions") in favor of the existing lessees of the Licenses (collectively, the "ROFR Parties");

WHEREAS, prior to the date hereof, WCO expended significant time, effort and resources, and, subject to receiving a favorable response to the Offer, plans to expend significant additional time, effort and resources, toward the evaluation, negotiation and documentation of the transaction outlined in the Offer (the "Transaction");

WHEREAS, the Offer is valuable to Company and will give Company an opportunity to sell the Licenses;

NOW, THEREFORE, for good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, Company and WCO agree as follows:

1. In consideration of the preparation and submission of the Offer by WCO while inducing WCO's willingness to commit additional time, effort and resources toward the evaluation, negotiation and/or documentation of the Transaction outlined in the Offer, Company agrees to the exclusivity and fee arrangements described herein.

2. *Exclusivity*.

   a. The "Exclusivity Period" shall extend with respect to each Licensee individually from the date hereof until the earliest of: (i) the six-month anniversary of the date hereof; (ii) the expiration of the Negotiating Window (as defined below) with respect to a License if Company and WCO do not enter into an asset purchase agreement reflecting the principal terms set forth in the Offer ("APA") during such Negotiating Window as set forth in Section 4 below; (iii) the date Company rejects an Amended Offer (as defined below) from WCO pursuant to Section 6 below or the expiration of the Negotiating Window for an Amended Offer, if any, pursuant to Section 6 below; or (d) the occurrence of a Material Transaction

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499-5300

Change (as defined below). For the avoidance of doubt, in no event shall the Exclusivity Period extend past the six-month anniversary of the date hereof.

b. During the Exclusivity Period, Company shall not, and shall cause its Affiliates and each of its and their respective directors, officers, employees and shall direct each of its and their respective representatives or agents, including without limitation investment bankers, lawyers and other advisors (collectively, the "Representatives") not to, do any of the following, directly or indirectly: (i) negotiate, authorize, propose or enter into a definitive agreement or an agreement in principle with respect to any transaction involving a direct or indirect sale, transfer or lease of any License to any third party (any of the foregoing, an "Acquisition Transaction"); (ii) solicit, conduct any discussions or negotiations with respect to or otherwise knowingly encourage or facilitate any submissions of proposals or offers in respect of, an Acquisition Transaction; or (iii) furnish or cause to be furnished to any Person (as defined below) other than its Representatives any information in connection with an Acquisition Transaction or any information about the Offer (including the identity of WCO) or the terms of this Agreement.

c. In the event any third party (other than a ROFR Party) provides a proposal or offer to Company, or makes an inquiry or contact with WCO, in each case, in connection with an Acquisition Transaction, Company or its Representatives shall promptly notify WCO in writing and shall provide WCO with the proposed terms and a copy of any materials received in connection therewith. Company further agrees to immediately suspend, and to instruct its Representatives to immediately suspend, any activities that would be prohibited by this paragraph. Notwithstanding anything contained in this Section 2 to the contrary, nothing in this Section 2 shall prohibit Company from complying with its obligations under the lease agreements with the ROFR Parties, including complying with the ROFR Provisions thereunder by entering into discussions, negotiations or one or more definitive agreements for a ROFR Transaction (as defined below) or closing such ROFR Transaction, subject to compliance with Section 3 hereto if applicable.

3. *ROFR Transaction*. In addition and without limiting the foregoing, if, at any time during the Exclusivity Period, Company enters into an agreement with a ROFR Party or any of its Affiliates pursuant to an exercise of a ROFR Provision on the basis of the Offer (each, a "ROFR Transaction"), then Company agrees to pay to an account designated by WCO a break-up fee with respect to each License included in such ROFR Transaction equal to the amount set forth on Exhibit A opposite such License under the heading "Break-Up Fee" (each, a "Break-Up Fee") within five (5) business days following the date that Company has received all or a portion of the consideration with respect to such ROFR Transaction, whether the receipt of such consideration occurs during or after the Exclusivity Period.

WINNICK & COMPANY

9355 Wilshire Blvd. Suite 200
Beverly Hills, CA. 90210
(310) 499-5300

4. *Negotiation and Execution of APA During Negotiating Window.* Promptly upon learning from a ROFR Party whether it will exercise of its rights under the ROFR Provisions, including any election by the ROFR Party declining to exercise such rights or the expiration of the period available to the ROFR Party to exercise such rights, Company shall provide WCO a written notice stating whether the applicable ROFR Party has exercised its rights under the ROFR Provisions (each a "ROFR Notice"). With respect to each License where the applicable ROFR party has failed to exercise its rights under the ROFR Provisions, Company and WCO shall negotiate in good faith and use their respective reasonable best efforts to enter into an APA covering such License that reflects the principal terms set forth in the Offer and contains other terms that are industry-standard for asset purchase agreements of such nature, or add such License to an existing APA between Company and WCO by amendment of the APA prior to the expiration of the Negotiating Window. For purposes of this Agreement, "Negotiating Window" means, with respect to each Lease where the applicable ROFR Party has failed to exercise its rights under the ROFR Provisions, the period during which Company and WCO may enter into a definitive agreement with respect to the Transaction without retriggering the ROFR Party's rights of first refusal pursuant to the ROFR Provisions.

5. *Tail Period.* Without limiting the foregoing, if the Negotiating Window expires for a License without Company and WCO executing an APA for such License despite each party negotiating in good faith, then, if Company enters into an Acquisition Transaction with T-Mobile US, Inc. or its Affiliate (collectively "TMO") at any time during the six-month period following the expiration of the Negotiating Window ("Tail Period"), Company shall pay the Break-Up Fee for such License to an account designated by WCO within five (5) business days following the date that Company has received all or a portion of the consideration with respect to such Acquisition Transaction, whether the receipt of such consideration occurs during or after the Tail Period.

6. *Amended Offer.* Notwithstanding the foregoing or anything else in this Agreement to the contrary, WCO may determine during the Negotiating Window with respect to a License, in its reasonable discretion based on its due diligence, to materially modify the terms of the Offer in a manner adverse to Company (each an "Amended Offer"). WCO shall use commercially reasonable efforts to submit any Amended Offer as early as practicable during the Negotiating Window for the License.

   a. If WCO submits an Amended Offer with respect to a License and Company rejects such Amended Offer, Company will no longer be subject to the Exclusivity Period or owe WCO a Break-Up Fee with respect to such License.

   b. If WCO submits an Amended Offer with respect to a License and Company accepts such Amended Offer, Company shall comply with its obligations to the applicable ROFR Parties under the lease agreement for the License, including complying with the ROFR Provisions thereunder by entering into discussions, negotiations or one or more definitive agreements for a ROFR Transaction taking

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499-5300

into account the Amended Offer. As soon as reasonably feasible thereafter, Company shall provide WCO with a ROFR Notice with respect to the Amended Offer in accordance with Section 4 above.

i. If the ROFR Notice states that Company is unable to sell such License to WCO due to the exercise by a ROFR Party of its right to enter into a ROFR Transaction with respect to such License, the Exclusivity Period shall terminate and Company's obligation to pay WCO the Break-Up Fee associated with the License pursuant and subject to Section 3 shall survive, except that the Break-Up Fee shall be reduced by the *pro rata* difference between WCO's original Offer for the License and the Amended Offer.

ii. If the ROFR Notice states that Company is able to sell such License due to the failure by a ROFR Party to exercise its right to enter into a ROFR Transaction with respect to such License, Company and WCO shall negotiate in good faith and use their respective reasonable best efforts to enter into an APA covering such License that reflects the principal terms set forth in the Amended Offer and contains other terms that are industry-standard for asset purchase agreements of such nature, or add such License to an existing APA between Company and WCO by amendment of the APA.

c. Notwithstanding anything in this Agreement to the contrary, upon the occurrence of a Material Transaction Change, (i) the Exclusivity Period and (ii) Company's obligation to pay a Break-Up Fee, in each case, with respect to all Licenses shall terminate, except with respect to any ROFR Transactions entered into on the basis of the Offer prior to the occurrence of the Material Transaction Change. For purposes of this Agreement, "Material Transaction Change" means (A) the withdraw of the Offer and/or (B) submission by WCO of Amended Offers, in each case, with respect to Leases representing 20% or more (by dollar value) of the aggregate Break-Up Fees payable hereunder.

7. If Company enters into an agreement for a ROFR Transaction between Company and a ROFR Party under Section 3 or an agreement for an Acquisition Transaction between Company and TMO under Section 5 (each a "Triggering Event"), and Company has not paid the applicable Break-Up Fee to WCO within 180 days of the Triggering Event, then Company shall, upon WCO's written request, report monthly in writing to WCO on the status of the underlying ROFR Transaction under Section 3 or Acquisition Transaction under Section 5 until such time as such transaction has closed or been terminated.

8. The term "Affiliate" means with respect to a party, any other Person which, directly or through one or more intermediaries, is controlled by, controls or is under common control with such party, and will include any Person that enters into a transaction with a ROFR

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499 5300

Party or any of its Affiliates pursuant to which the ROFR Party and/or any of its Affiliates has the right to use such License or Licenses other than in accordance with the applicable lease(s) of such License or Licenses in effect as of the date hereof. The term "Person" means any general partnership, limited partnership, limited liability company, corporation, joint venture, trust, business trust, governmental authority, cooperative, association, other entity, or individual, and the heirs, executors, administrators, legal representatives, successors, and assigns of such person as the context may require.

9. Nothing in this Agreement shall be construed as an obligation of any of the parties hereto to proceed with the Transaction. Each party shall be free for any reason to withdraw from discussions and not proceed with a Transaction without obligation or liability to the other or to any other person, provided that any such withdrawal by a party from discussions shall not affect such party's obligations hereunder.

10. In the event of litigation relating to this Agreement, the non-prevailing party as determined by a court of competent jurisdiction will be liable for, and will pay to the prevailing party, the reasonable cost of such litigation, including, without limitation, outside legal fees incurred by the prevailing party in connection with such litigation (including any appeal relating thereto).

11. This Agreement may not be assigned by operation of law or otherwise without the express prior written consent of the other parties hereto. This Agreement may not be amended or modified except by an instrument in writing signed by each of the parties to this Agreement. This Agreement and the Offer are the complete and exclusive statement of the parties' agreement with respect to the subject matter and supersedes all other oral and written agreements or communications between the parties prior to the execution of this Agreement relating to this subject matter. Nothing in this Section is intended to limit or exclude any liability for fraud by either party prior to the execution of this Agreement.

12. This Agreement shall be governed by, and the rights and duties of the parties hereunder shall be construed in accordance with, the laws of the State of New York. The parties hereby irrevocably and unconditionally consent and submit to the exclusive jurisdiction of the courts of the State of New York and of the United States of America located in New York County for any actions, suits or proceedings arising out of or relating to this Agreement (and agree not to commence any action, suit or proceeding relating thereto except in such courts, and further agree that service of any process, summons, notice or document by U.S. registered mail to their respective addresses set forth above shall be effective service of process for any action, suit or proceeding brought against either party in any such court). The parties hereby irrevocably and unconditionally waive any objection that either party may now or hereafter have to the laying of venue of any action, suit or proceeding arising out of or relating to this Agreement in the courts of the State of New York or the United States of America located in New York County, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499 5300

in an inconvenient forum. THE PARTIES FURTHER IRREVOCABLY AND UNCONDITIONALLY WAIVE THE RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

13. The parties hereto agree that irreparable damage may occur in the event any provision of this Agreement was not performed in accordance with the terms hereof, that the parties hereto shall be entitled to seek specific performance of the terms hereof, in addition to any other remedy at law or equity, and that any requirement for the proving of actual damages or the securing or posting of any bond in connection with such remedy is waived.

14. This Agreement may be executed by facsimile signature and in counterparts.

*[Signatures on next page.]*

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499-5300

In order to confirm our mutual agreement as set forth in this Agreement, please sign this Agreement in the space provided below and return it to us, whereupon it shall constitute our binding agreement with respect to the subject matter hereof.

Hispanic Information and Telecommunications Network, Inc.

By: ______________________
Name: Jonathan Guerra
Title: General Counsel

WCO Spectrum, LLC, by its managing member Winnick & Company

By: ______________________
Name: Carl Katerndahl
Title: Managing Partner

By: ______________________
Name: Tom Griffith
Title: Managing Director

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA. 90210
(310) 499-5300

**EXHIBIT A**

LICENSES; BREAK-UP FEES

| Call Sign | Market | Break-Up Fee |
|---|---|---|
| WHR829 | New York, NY | $2,150,533.92 |
| WNC208 | Houston, TX | $1,324,797.39 |
| WLX546 | Seattle, WA | $727,816.26 |
| WLX825 | Philadelphia, PA | $521,390.01 |
| WQAB902 | New York, NY (LI) | $519,205.97 |
| WLX537 | Pittsburgh, PA | $465,313.40 |
| WLX681 | Portland, OR | $462,633.07 |
| WLX704 | San Antonio, TX | $408,849.48 |
| WLX370 | Las Vegas, NV | $406,409.75 |
| WLX690 | Providence, RI | $406,144.02 |
| WLX667 | Salt Lake City, UT | $403,399.60 |
| WLX435 | Cincinnati, OH | $387,298.87 |
| WLX362 | Orlando, FL | $377,572.56 |
| WLX709 | Kansas City, MO | $363,071.12 |
| WLX720 | Sacramento, CA | $328,560.07 |
| WQCQ718 | Raleigh, NC | $325,968.06 |
| WND384 | San Bernardino, CA | $325,247.72 |
| WLX684 | Nashville, TN | $292,249.70 |
| WQCQ267 | Harrisburg, PA | $278,551.43 |
| WNC321 | Hartford, CT | $275,380.96 |
| WLX375 | Dayton, OH | $270,926.71 |
| WLX557 | Memphis, TN | $265,676.55 |
| WLX672 | Oklahoma City, OK | $259,391.35 |
| WLX671 | Fresno, CA | $241,829.64 |
| WLX753 | Rochester, NY | $225,154.95 |
| WHR681 | New Orleans, LA | $211,845.27 |
| WLX470 | Tucson, AZ | $209,284.38 |
| WLX367 | Los Angeles, CA | $201,082.84 |
| WLX770 | Buffalo, NY | $193,933.38 |
| WLX538 | Jacksonville, FL | $192,098.62 |
| WNC558 | Phoenix, AZ | $191,795.39 |
| WHR930 | Albany, NY | $183,945.58 |

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA 90210
(310) 499-5300

| | | |
|---|---|---|
| WLX673 | Albuquerque, NM | $181,676.62 |
| WNC584 | El Paso, TX | $180,769.77 |
| WLX534 | Tulsa, OK | $179,590.78 |
| WNC681 | Norfolk, VA | $168,485.30 |
| WND612 | Charlotte, NC | $163,833.48 |
| WLX682 | Syracuse, NY | $161,358.86 |
| WLX361 | Colorado Springs, CO | $144,594.22 |
| WNC633 | Mobile, AL | $116,606.17 |
| WLX249 | Corpus Christi, TX | $92,219.58 |
| WNC285 | Albany, NY | $46,358.81 |
| WQCN524 | Grand Junction, CO | $42,107.28 |
| WLX806 | Las Cruces, NM | $35,064.06 |
| WQCN526 | Bullhead City, AZ | $27,857.11 |
| WQCI715 | Wenatchee, WA | $25,120.14 |
| WQCQ367 | Casper, WY | $16,678.19 |
| WQCQ366 | Globe, AZ | $11,157.83 |
| WQCQ365 | Key West, FL | $9,163.77 |
| Total | | $ 15,000,000.00 |

# EXHIBIT B

**HISPANIC INFORMATION AND**
**TELECOMMUNICATIONS NETWORK, INC.**
**63 FLUSHING AVENUE**
**BUILDING #292, SUITE #211**
**BROOKLYN, NY 11205**

August 14, 2020

Fixed Wireless Holdings, LLC
c/o Sprint Corp.
12502 Sunrise Valley Drive
VARESA0101-1A213
Reston, VA 20196
Attn: Patricia Tikkala, VP Spectrum
Email: patricia.tikkala@sprint.com

Sprint Corp.
12502 Sunrise Valley Drive
VARESA0209-2D187
Reston, VA 20196
Attn: Heather Brown, Legal
Email: heather.brown@sprint.com

Dear Patricia and Heather:

Reference is made to the EBS Capacity Use and Royalty Agreements set forth on Appendix A attached hereto (collectively, the "**Use Agreements**" and each individually, a "**Use Agreement**") entered into by and between Hispanic Information and Telecommunications Network, Inc., a New York not-for-profit corporation ("**Licensee**" or "**HITN**"), and Clearwire Spectrum Holdings LLC, a Delaware limited liability company ("**Clearwire**"). Capitalized terms not defined in this notice (this "**Notice**") shall have the meanings set forth in the applicable Use Agreements.

This Notice is being delivered pursuant to Section 10(c)(ii) of each Use Agreement and constitutes the "Transfer Notice" described therein to notify Clearwire of Licensee's intention to enter into a FCC Licenses Sale pursuant to the offer attached hereto as Appendix B (the "**Offer**"). In accordance with the Use Agreements, the Offer sets forth (among other things) a list of the Licenses involved, the purchase price therefor and a summary of the other material terms and conditions thereof. Pursuant to Section 10(c)(ii) of each Use Agreement, Clearwire has the option (the "**ROFR Option**") to acquire the Licenses proposed to be sold in the Offer upon the terms and subject to the conditions of the proposed FCC Licenses Sale set forth in this Notice if (and only if) it notifies Licensee of such election during the Acceptance Period, which shall expire forty-five (45) days following its receipt of this Notice. Accordingly, Licensee hereby requests that Clearwire complete and return to Licensee either (i) the response notice attached hereto as Appendix C or (ii) an alternate notice notifying Licensee of such election (each of clauses (i) and (ii), a "**Response Notice**") as soon as reasonably practicable but in any event on

or prior to **September 29, 2020** (the "**Acceptance Expiration Date**"). If Licensee does not receive a Response Notice from Clearwire on or prior to the Acceptance Expiration Date, Clearwire shall be deemed to have waived its ROFR Option with respect to all Licenses proposed to be sold in the Offer, subject to certain reinstatement rights set forth in each Use Agreement.

A copy of any Response Notice or other notice sent to Licensee pursuant to each Use Agreement shall be sent to HITN's counsel at the following address:

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
Attention: Bradley G. Kulman

If you have any questions regarding this Notice or the Offer, please contact Bradley Kulman (bkulman@stroock.com; (212) 806-6613) or Jimmy Fang (jfang@stroock.com; (212) 806-1217) of Stroock & Stroock & Lavan LLP.

Very truly yours,

**HISPANIC INFORMATION AND TELECOMMUNICATIONS NETWORK, INC.**

By: ______________________
Name: Jonathan Guerra
Title: General Counsel

## Appendix A

### List of Use Agreements

| | Use Agreement | Call Sign | Market Area |
|---|---|---|---|
| 1. | EBS Capacity Use and Royalty Agreement, dated as of June 21, 2005, by and between Hispanic Information and Telecommunications Network, Inc. and Fixed Wireless Holdings, LLC | WLX546 | Seattle, WA |
| 2. | EBS Capacity Use and Royalty Agreement, dated as of September 15, 2005, by and between Hispanic Information and Telecommunications Network, Inc. and Clearwire Spectrum Holdings LLC | WLX557 | Memphis, TN |
| 3. | EBS Capacity Use and Royalty Agreement, dated as of September 23, 2005, by and between Hispanic Information and Telecommunications Network, Inc. and Clearwire Spectrum Holdings LLC | WQCI715 | Wenatchee, WA |
| 4. | EBS Capacity Use and Royalty Agreement, dated as of October 31, 2005, by and between Hispanic Information and Telecommunications Network, Inc. and Clearwire Spectrum Holdings LLC | WQCN526 | Bullhead City, AZ |
| 5. | EBS Capacity Use and Royalty Agreement, dated as of October 31, 2005, by and between Hispanic Information and Telecommunications Network, Inc. and Clearwire Spectrum Holdings LLC | WQCN524 | Delta (Grand Junction), CO) |
| 6. | EBS Capacity Use and Royalty Agreement, dated as of November 16, 2005, by and between Hispanic Information and Telecommunications Network, Inc. and Clearwire Spectrum Holdings LLC | WQCQ367 | Casper, WY |
| 7. | EBS Capacity Use and Royalty Agreement, dated as of November 16, 2005, by and between Hispanic Information and Telecommunications Network, Inc. and Clearwire Spectrum Holdings LLC | WQCQ366 | Globe, AZ |
| 8. | EBS Capacity Use and Royalty Agreement, dated as of November 16, 2005, by and between Hispanic Information and Telecommunications Network, Inc. and Clearwire Spectrum Holdings LLC | WQCQ365 | Key West, FL |
| 9. | EBS Capacity Use and Royalty Agreement, dated as of November 16, 2005, by and between Hispanic Information and Telecommunications Network, Inc. and Clearwire Spectrum Holdings LLC | WQCQ718 | Raleigh, NC |

# Appendix B

## Offer

[See attached.]

# WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA. 90210
(310) 499-5300

July 29, 2020

Hispanic Information and Telecommunications Network, Inc.
63 Flushing Ave
Brooklyn, NY 11205
Attn: Jonathan Guerra

Ladies and Gentlemen:

We write to propose a purchase of certain Educational Broadband Service ("EBS") spectrum licenses from Hispanic Information and Telecommunications Network, Inc. and any of its affiliates ("HITN") by WCO Spectrum, LLC ("WCO") or an entity affiliated with WCO.

WCO is an affiliate of Winnick and Company, a private investment firm formed in 1985 to facilitate investments in various asset classes. Our proposed acquisition would be funded by WCO and its primary investor Gary Winnick. Mr. Winnick is a well-known financier, considered a specialist in financing and operating telecommunication assets and companies. Mr. Winnick has sourced and deployed billions of dollars to fund transformative technologies and corporate innovation, providing capital and counsel to dozens of companies in a wide range of industries, including Telecommunications, Healthcare, Construction and Building Materials, Real Estate, Technology and IT Services, Media and Financial Services.

WCO is prepared to propose to purchase the majority of the EBS licenses owned, controlled or operated by HITN, along with any lease agreements relating to the EBS licenses, TWO HUNDRED FIFTY-ONE MILLION ONE HUNDRED TWENTY-FIVE THOUSAND FOUR HUNDRES SIXTY-TWO DOLLARS AND FIFTY-SEVEN CENTS ($251,125,462.57) in cash. The terms of our offer are more specifically delineated in the attached Exhibit A.

The proposed acquisition will be financed by Winnick and Company, the backer of WCO. There are no corporate shareholders or other external approvals required for WCO to make this proposal. WCO will comply with all license and approval processes. Gary Winnick, the owner of WCO, has previously been active in the telecom industry, and his underlying companies have consistently received FCC transfer of control approvals.

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA. 90210
(310) 499-5300

Please feel free to contact the following team members at any time to discuss this proposal:

Carl Katerndahl
Managing Partner, Winnick & Co.
(310) 801-8276
Ckaterndahl@winnickco.com

Tom Griffith
Managing Director, Winnick & Co.
(310) 480-2181
Tgriffith@winnickco.com

This offer is submitted with the expectation that it and all subsequent discussions with WCO and its partners and advisors concerning the proposal will be treated with strict confidence by HITN and will not be disclosed other than (a) to officers, directors and employees of HITN and (b) to those advisors to HITN who either agree or have a legal obligation to keep such information confidential; it being understood that you may also disclose the terms of this offer to the extent required to comply with your obligations under the EBS leases.

This letter is solely a non-binding offer and is not, and should not be, considered a legally binding indication or agreement in any manner, and the failure to execute definitive documentation or consummate the proposed acquisition shall impose no liability on WCO or HITN.

We hope to have the opportunity to proceed with you on this transaction. If you have any questions concerning this offer, please do not hesitate to contact us.

Sincerely,

Carl Katerndahl
Managing Partner, Winnick & Co.

Tom Griffith
Managing Director, Winnick & Co.

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA. 90210
(310) 499-5300

**EXHIBIT A**
**MATERIAL TERMS FOR LICENSE PURCHASE OFFER**

This term sheet ("Term Sheet") summarizes the basic terms and conditions pursuant to which WCO Spectrum, LLC (the "Buyer") proposes to acquire certain Educational Broadband Service ("EBS") licenses from Hispanic Information and Telecommunications Network, Inc. and any of its affiliates (the "Seller"). The terms and conditions summarized herein are provided for DISCUSSION PURPOSES ONLY. They do not represent a binding offer, agreement, or commitment from the Buyer to acquire the EBS licenses or any other assets, nor are they all-inclusive. Closing of the proposed transaction is subject to completion of due diligence by the Buyer, the satisfaction of customary conditions precedent and execution of definitive agreements mutually acceptable to the parties (the "Definitive Agreements"), the provisions of which will be consistent with, but supersede, this Term Sheet and all other understandings between the parties. This Term Sheet does not create and is not intended to create a duty to negotiate in good faith towards a binding contract and may not be relied upon as the basis for a contract by estoppel or otherwise.

| | |
|---|---|
| **The Transaction:** | The Buyer shall purchase each of the EBS licenses set forth on Annex 1 (each a "License" and collectively, the "Licenses") at the prices indicated on such Annex and assume all lease agreements relating to the Licenses (subject to confirmatory due diligence) (collectively, the "Leases"). The terms and conditions for the purchase of each of the Licenses and the Leases is set forth below. In the event that the Seller owns any of the equipment used to provide services using the spectrum covered by the Licenses, such equipment, except those devices discussed in the following sentence, shall be included in the assets being purchased by the Buyer. To the extent the Leases confer the Licensee rights to free devices and associated broadband accounts supporting 'permissible users', whenever permissible, Buyer shall assign to Seller rights associated with these accounts, for a period of no less than 36 months. |
| **Purchase Price:** | Aggregate purchase price of $251,125,462.57, allocated among the Licenses (and related Leases) as |

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA. 90210
(310) 499-5300

| | |
|---|---|
| | set forth on Annex 1. The cash Purchase Price shall be reduced by 50% of the dollar basis for each dollar in revenue received by the Seller with respect to such License (and related Leases) to the extent attributable to lease periods after the filing of the transfer of the respective Licenses and Leases with the FCC. |
| **Representations and Warranties:** | The Seller and Buyer shall each provide customary representations and warranties for transactions of this size and nature. As the Transaction is primarily a sale of FCC licenses and specified Leases, the representations and warranties are expected to be limited. |
| **Closing Conditions:** | The closing of the Transaction shall be subject to customary closing conditions, including a final order, from the Federal Communications Commission approving the transfer of the Licenses, unless such closing conditions are waived by WCO. |
| **Survival of Representations and Warranties:** | Except with respect to representations and warranties relating to organization, due authority, the Leases, absence of conflicts, FCC matters and absence of brokers, (the "Specified Representations"), which shall each survive the closing of the Transaction for an agreed period, each party's representations and warranties shall not survive the closing of the Transaction (i.e., no post-closing indemnification other than for breach of the Specified Representations and for fraud). We do not anticipate either party to have any indemnification that survives closing, other than with respect to the matters addressed in the Specified Representations. |

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA. 90210
(310) 499-5300

**ANNEX 1**
**LICENSES; ASSOCIATED OFFERS**

| Call Sign | Market | Price |
|---|---|---|
| WHR829 | New York, NY | $ 36,003,588.37 |
| WNC208 | Houston, TX | $ 22,179,357.14 |
| WLX546 | Seattle, WA | $ 12,184,879.70 |
| WLX825 | Philadelphia, PA | $ 8,728,953.82 |
| WQAB902 | New York, NY (LI) | $ 8,692,389.27 |
| WLX537 | Pittsburgh, PA | $ 7,790,136.24 |
| WLX681 | Portland, OR | $ 7,745,262.93 |
| WLX704 | San Antonio, TX | $ 6,844,834.27 |
| WLX370 | Las Vegas, NV | $ 6,803,989.14 |
| WLX690 | Providence, RI | $ 6,799,540.31 |
| WLX667 | Salt Lake City, UT | $ 6,753,594.08 |
| WLX435 | Cincinnati, OH | $ 6,484,040.50 |
| WLX362 | Orlando, FL | $ 6,321,205.66 |
| WLX709 | Kansas City, MO | $ 6,078,426.82 |
| WLX720 | Sacramento, CA | $ 5,500,653.33 |
| WQCQ718 | Raleigh, NC | $ 5,457,258.68 |
| WND384 | San Bernardino, CA | $ 5,445,198.99 |
| WLX684 | Nashville, TN | $ 4,892,756.12 |
| WQCQ267 | Harrisburg, PA | $ 4,663,423.75 |
| WNC321 | Hartford, CT | $ 4,610,344.81 |
| WLX375 | Dayton, OH | $ 4,535,773.01 |
| WLX557 | Memphis, TN | $ 4,447,876.42 |
| WLX672 | Oklahoma City, OK | $ 4,342,651.57 |
| WLX671 | Fresno, CA | $ 4,048,638.61 |
| WLX753 | Rochester, NY | $ 3,769,476.00 |
| WHR681 | New Orleans, LA | $ 3,546,649.41 |
| WLX470 | Tucson, AZ | $ 3,503,775.86 |
| WLX367 | Los Angeles, CA | $ 3,366,468.08 |
| WLX770 | Buffalo, NY | $ 3,246,773.91 |

WINNICK & COMPANY

9355 Wilshire Blvd., Suite 200
Beverly Hills, CA. 90210
(310) 499-5300

| | | | |
|---|---|---|---|
| WLX538 | Jacksonville, FL | $ | 3,216,057.01 |
| WNC558 | Phoenix, AZ | $ | 3,210,980.46 |
| WHR930 | Albany, NY | $ | 3,079,561.21 |
| WLX673 | Albuquerque, NM | $ | 3,041,575.03 |
| WNC584 | El Paso, TX | $ | 3,026,392.76 |
| WLX534 | Tulsa, OK | $ | 3,006,654.55 |
| WNC681 | Norfolk, VA | $ | 2,820,729.98 |
| WND612 | Charlotte, NC | $ | 2,742,850.55 |
| WLX682 | Syracuse, NY | $ | 2,701,421.28 |
| WLX361 | Colorado Springs, CO | $ | 2,420,752.76 |
| WNC633 | Mobile, AL | $ | 1,952,185.25 |
| WLX249 | Corpus Christi, TX | $ | 1,543,912.25 |
| WNC285 | Albany, NY | $ | 776,125.16 |
| WQCN524 | Grand Junction, CO | $ | 704,947.34 |
| WLX806 | Las Cruces, NM | $ | 587,031.91 |
| WQCN526 | Bullhead City, AZ | $ | 466,375.25 |
| WQCI715 | Wenatchee, WA | $ | 420,553.71 |
| WQCQ367 | Casper, WY | $ | 279,221.23 |
| WQCQ366 | Globe, AZ | $ | 186,801.03 |
| WQCQ365 | Key West, FL | $ | 153,417.05 |
| **Total** | | **$** | **251,125,462.57** |

# Appendix C

## Response Notice

**[INSTRUCTIONS: PLEASE COMPLETE THE RESPONSE NOTICE BELOW AND RETURN TO THE ATTENTION OF JONATHAN GUERRA, GENERAL COUNSEL OF HITN (JGUERRA@HITN.ORG) AND KENNEDY PAUL, CHIEF OPERATING OFFICER AND CHIEF FINANCIAL OFFICER OF HITN (KPAUL@HITN.ORG) ON OR PRIOR TO [____________], 2020.]**

[______________], 2020

Hispanic Information and Telecommunications Network, Inc.
63 Flushing Avenue
Building #292, Suite #211
Brooklyn, NY 11205

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
Attention: Bradley G. Kulman

Dear Jonathan and Paul:

Clearwire is in receipt of Licensee's Transfer Notice, dated [____________], 2020. Capitalized terms not defined in this notice shall have the meanings set forth in the Transfer Notice.

Pursuant to Section 10(c)(ii) of the Use Agreements, Clearwire hereby (check one):

_______ elects to exercise its ROFR Option with respect to the Licenses set forth on Appendix A attached hereto.

_______ elects to waive its ROFR Option with respect to the Licenses set forth on Appendix B attached hereto.

[Clearwire hereby requests that Licensee contact [*Name*] at [*telephone and email*] in regards to the execution of the ROFR Option with respect to the Licenses set forth on Appendix A attached hereto.]

Very truly yours,

**CLEARWIRE SPECTRUM HOLDINGS LLC**

By: ______________________________
Name:
Title:

# Appendix A

## Licenses – ROFR Option Election

[To be completed by Clearwire.]

## Appendix B

**Licenses – ROFR Option Waiver**

[To be completed by Clearwire.]